1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

FILICIA ROOT,

11

Plaintiff,

CASE NO. 11cv5713-JRC

12

v.

ORDER ON PLAINTIFF'S
COMPLAINT

13

14

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

15

16

Defendant.

17

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19

Magistrate Judge and Consent Form, ECF No. 4; Consent to Proceed Before a United

20

States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos.

21

21, 25, 26).

22

Given the errors in the ALJ's decision and based on the relevant record, the Court

23

24

concludes that the medical opinion evidence by Dr. Neims that was rejected improperly

by the ALJ, along with the other improperly rejected evidence, demonstrates conclusively that plaintiff was disabled and no further utility may be gained from further administrative proceedings.

Therefore, this Court Orders that this matter be reversed pursuant to sentence four of 42 U.S.C. § 405(g), and remanded with a direction to award benefits to plaintiff as of her amended alleged date of disability onset of October 1, 2007 based on applications protectively filed in September, 2008.

<u>BACKGROUND</u>

Plaintiff, FILICIA ROOT, was twenty-five years old on her alleged date of disability onset (*see* Tr. 120). Plaintiff had at least the severe impairments of obesity; degenerative joint disease; major depressive disorder; generalized anxiety disorder; and a personality disorder (*see* Tr. 20). As indicated in one of plaintiff's treating records, plaintiff "had poor memory secondary to childhood meningitis" (*see* Tr. 27; *see also* Tr. 258, 331). With the assistance of her sister, plaintiff reported to Nurse Practitioner Brian Noonan, ARNP, that she experienced "a life long history of extreme anxiety and dependence on her sister" (*see* Tr. 329).

Although plaintiff reported only one episode of "cutting," she "became tearful and was not capable of elaboration" (*see* Tr. 330). Plaintiff has only vague recollections regarding her childhood as her "childhood memories are virtually nonexistent related to meningitis" (*id.*). Plaintiff graduated with the assistance of special education classes (*id.*).

As quoted by the ALJ, from one of plaintiff's doctors:

> The claimant was obese, and her clothing was tightly fitting. She presented with moderate body odor and halitosis. Her hair appeared clean and well maintained. She rocked intermittently and often stared out the door in a hypervigilant fashion. Periodic exacerbations in anxious arousal led for the claimant to have episodes of poor focus and off task responding. These patterns intruded upon MSE tasks and aspects of testing administered.

(Tr. 28 (*citing* Tr. 334)).

## PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income in September, 2008 (*see* Tr. 18, 120-33). Her applications were denied initially and following reconsideration (Tr. 72-75, 80-81, 85-86). Plaintiff's requested hearing was held before Administrative Law Judge Gary J. Suttles ("the ALJ") on March 16, 2010 (Tr. 90-91, 366-406). On April 2, 2010, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act from April 15, 2005 through the date of the decision (*see* Tr. 15-35).

On August 1, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court in September, 2011, seeking judicial review of the ALJ's written decision (ECF Nos. 1, 3). Defendant filed the sealed administrative transcript regarding this matter ("Tr.") on November 22, 2011 (ECF Nos. 10, 11).  A supplemental sealed administrative record regarding this matter (Tr. 366-406) was filed on February 17, 2012 (*see* ECF No. 19).

Notably, defendant concedes in the Responsive Brief that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings (*see* ECF No. 25). Plaintiff, however, requests that this matter be reversed and remanded with a direction to award benefits (*see* Reply, ECF No. 26).

<u>STANDARD OF REVIEW</u>

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also  Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician or psychologist. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining doctor's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) ("In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record"). The ALJ can accomplish this by "setting out a

detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

<u>DISCUSSION</u>

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The ALJ noted objective findings by Dr. Daniel Neims, Psy.D. ("Dr. Neims") based on his mental status examination yet found that Dr. Neims' opinions are "unsupported by objective clinical findings" (*see* Tr. 32; *see also* Tr. 28-30; 336-38). This finding by the ALJ represents a fundamental misunderstanding as to the nature of the mental status examination. *See* Trzepacz, *supra*, The Psychiatric Mental Status Examination 4.

A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering

from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *See Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the examining and treating doctors, are correct. *Reddick, supra*, 157 F.3d at 725; *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873074 (D.C. Cir. 1987)).

Although it often is the case that a claimant's failure to comply with prescribed treatment calls into question the severity of the claimant's symptoms, this generally is because such failure suggests that the claimant willfully is failing to submit to medical treatment because he or she wishes to remain disabled and receive benefits, or because he or she is not suffering from that severe of an impairment if not doing everything possible to remedy it. *See* 20 C.F.R. § 404.1530; *see also* SSR 96-7 1996 SSR LEXIS 4, at *21-*22 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . . and there are no good reasons for this failure"); *but see Nichols v. Califano*, 556 F.2d 931, 932 (9th Cir. 1977) (even if a condition could be remedied by surgery, if the claimant's "actions were reasonable under the circumstances, then the district court's judgment upholding the

1   [written decision by the ALJ] must be reversed"). However, a good reason can provide a

2   valid excuse for not following prescribed treatment. 20 C.F.R. § 404.1530; SSR 96-7

3   1996 SSR LEXIS 4, at *21-*22; *Nichols, supra*, 556 F.2d at 933.

4          When a mental illness is involved, assuming that a failure to comply with

5   prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be

6   illogical. This is in part because a person suffering from a mental illness may not realize

7   that she needs her medication, or she may not even realize that her "condition reflects a

8   potentially serious mental illness." *See Van Nguyen, supra*, 100 F.3d at 1465. "'[I]t is a

9   questionable practice to chastise one with a mental impairment for the exercise of poor

10  judgment in seeking rehabilitation.'" *Id.* (*quoting with approval*, *Blankenship, supra*, 874

11  F.2d at 1124). Here, the ALJ relied heavily in his written decision on the finding that

12  plaintiff was "not receiving mental treatment or taking psychoactive medication" (Tr. 28,

13  30).

14         When a person suffers from a mental illness, especially multiple severe ones such

15  as the severe major depressive disorder, generalized anxiety disorder and personality

16  disorder suffered by plaintiff here, (*see* Tr. 20), and the mentally ill person does not have

17  the requisite insight into her condition, or does not have the memory, calm state of mind

18  or focus to have the ability to take a medication regularly, this fact actually can indicate a

19  greater severity of mental incapacity. *See Van Nguyen, supra*, 100 F.3d at 1465; *see also*

20  *Blankenship, supra*, 874 F.2d at 1124. A person's mental illness can result in or

21  contribute to a lack of treatment compliance. *See Van Nguyen, supra*, 100 F.3d at 1465;

22  *see also Blankenship, supra*, 874 F.2d at 1124.

1    Here, the parties agree that the ALJ failed to evaluate properly the medical and

2    psychological evidence before him.

3    Generally when the Social Security Administration does not determine a

4    claimant's application properly, "'the proper course, except in rare circumstances, is

5    to remand to the agency for additional investigation or explanation.'" *Benecke v.*

6    *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth

7    Circuit has put forth a "test for determining when [improperly rejected] evidence

8    should be credited and an immediate award of benefits directed." *Harman v. Apfel*,

9    211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

10

11            (1) the ALJ has failed to provide legally sufficient reasons for
             rejecting such evidence, (2) there are no outstanding issues that
12            must be resolved before a determination of disability can be
             made, and (3) it is clear from the record that the ALJ would be
13            required to find the claimant disabled were such evidence
             credited.
14
     *Harman, supra*, 211 F.3d at 1178 (*quoting Smolen, supra*, 80 F.3d at 1292).
15
         The parties already have agreed that the ALJ failed to provide legally sufficient
16
     reasons for rejecting the evidence provided by plaintiff, including medical source opinion
17
     evidence, lay witness testimony, and plaintiff's testimony (*see* Response, ECF No. 25, p.
18
     5). Therefore, the Court has examined the record to determine if the improperly rejected
19
     evidence should be credited for an immediate award of benefits. *See Harman, supra*, 211
20
     F.3d at 1178.
21
         The decision whether to remand a case for additional evidence or simply to award
22
     benefits is within the discretion of the court.  *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th
23

24

Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).  In

*Varney*, the Ninth Circuit held that in cases where the record is fully developed, a remand

for further proceedings is unnecessary.  *Varney, supra*, 859 F.2d at 1401. *See also*

*Reddick v. Chater*, 157 F.3d 715, 728-730 (9th Cir. 1998) (case not remanded for further

proceedings because it was clear from the record claimant was entitled to benefits);

*Swenson, supra*, 876 F.2d at 689 (directing an award of benefits where no useful purpose

would be served by further proceedings); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th

Cir. 1989) (same); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987) (accepting

uncontradicted testimony as true and awarding benefits where the ALJ failed to provide

clear and convincing reasons for discounting the opinion of claimant's treating

physician).

In *Harman, supra*, 211 F.3d at 1178-79, the court evaluated the various cases on

the subject and summarized when it is appropriate to credit improperly discredited

testimony as true and direct an award of benefits.  The court cited *Varney, supra*, 859

F.2d at 1398-99, for the judicial policy behind its analysis:

> Requiring the ALJs to specify any factors discrediting a claimant
> at the first opportunity helps to improve the performance of the
> ALJs by discouraging them from reach[ing] a conclusion first,
> and then attempt[ing] to justify it by ignoring competent
> evidence . . . . [¶ And the rule [of crediting such testimony]
> ensures that deserving claimants will receive benefits as soon as
> possible . . . .
>
> . . . Certainly there may exist valid grounds on which to discredit
> a claimant's pain testimony. . . .  But if grounds for such a
> finding exist, it is both reasonable and desirable to require the
> ALJ to articulate them *in the original decision*.

1   *Harman, supra*, 211 F.3d at 1179 (emphasis added in *Harman*, internal quotes and

2   citation omitted in *Harman*). The Harmon court continued:

3
4
5
6

> Our reliance on *Varney II* to justify the current application of
> *Smolen* does not obscure the more general rule that the decision
> of whether to remand for further proceedings turns upon the
> likely utility of such proceedings. *See Lewin v. Schweiker*, 654
> F.2d 631, 635 (9th Cir. 1981). Rather, the *Smolen* test still
> enables only a limited exception to the general rule.

7   *Harman, supra*, 211 F.3d at 1179.

8      With these considerations in mind, the Court concludes that the evidence provided

9   by Dr. Neims; the medical expert, Dr. Reynolds, Ph.D.; plaintiff; and the lay witness all

10  were rejected by the ALJ without legally sufficient reasons. The Court also concludes

11  that there are no outstanding issues that must be resolved before a determination of

12  disability can be made and that it is clear from the record that if this evidence were

13  credited, the ALJ would be required to find plaintiff disabled, as described more fully

14  below.

15      The Court notes that very recently, the Ninth Circuit affirmed this rationale and held

16  that a particular matter should be remanded for payment of benefits. *See Brewes v.

17  Comm'r Soc. Sec.*, 682 F.3d 1157, 2012 U.S. App. LEXIS 12064 at *18 (9th Cir. June 14,

18  2012) (*citing Smolen, supra*, 80 F.3d at 1292). The ALJ in *Brewes* had relied expressly

19  on the testimony of the vocational expert, who had opined that if the (subsequently

20  improperly-rejected) evidence were credited, Brewes would be unemployable. *Brewes,

21  supra*, 682 F.3d 1157, 2012 U.S. App. LEXIS 12064 at *13. Because the evidence had

22  been rejected improperly and because the ALJ's opinion was not supported by substantial

23
24

evidence in the record as a whole, the court reversed the agency's final decision and remanded for a payment of benefits. *Id.* at *17-*18.

There are a number of reasons for this Court's determination to remand for an award of benefits in this matter here.

On February 13, 2010, Dr. Neims examined plaintiff, conducted a mental status examination and provided his opinions regarding functional limitations in a medical source assessment (mental) (Tr. 333-43). As noted by the ALJ in his written decision, Dr. Neims diagnosed plaintiff with generalized anxiety disorder; depressive disorder NOS; and a panic disorder with agoraphobia; and he opined that plaintiff was "impaired from sustained gainful employment for the foreseeable 12 months or longer" (*see* Tr. 28 (*citing* Tr. 338, 339)).

Dr. Neims' opinion is well supported by medically acceptable diagnostic techniques, including administration of a mental status examination, which yielded much objective evidence supporting Dr. Neims' opinion, as discussed by the ALJ, but not accommodated into the RFC (*see* Tr. 28-30; *see also* Tr. 336-38). In addition, based on a review of the relevant record, the Court concludes that Dr. Neims' opinions are well supported by objective medical evidence and not inconsistent with other substantial evidence of record (*see, e.g.*, Tr. 333-39). *See also Lester, supra*, 81 F.3d at 830-31. Although the ALJ relied in part on an opinion from another medical source (*i.e.*, not an acceptable medical source capable of evidencing the existence of an impairment, *see* 20 C.F.R. § 404.1513 (a), (d)(1)) that treatment compliance would make plaintiff better, the Court finds that the ALJ's rejection of Dr. Neims' opinions regarding plaintiff's marked

functional limitations  was not based on substantial evidence in the record as a whole. *See Magallanes*, *supra*, 881 F.2d at 750; *see also Brewes, supra*, 682 F.3d 1157, 2012 U.S. App. LEXIS 12064 at *16-*17.

The Court also notes that the ALJ explicitly rejected the opinions of Dr. Neims in part because plaintiff was "not receiving mental health treatment nor is she taking psychoactive medication" (*see* Tr. 32). The ALJ also relied on this reason, in part, as discussed further below, in order to reject improperly the opinion by non-examining, medical expert, Dr. Reynolds (*see* Tr. 33). On this issue, the ALJ indicated that:

> I don't find her reasons of being 'too scared' to be either credible or consistent with her abilities to do many other activities which she simply chooses to perform. I don't find credible an individual complaining of a medical or mental condition that refuses treatment, but then asserts that because of their failure to seek or get treatment they are disabled.

(Tr. 33). The Court agrees with the implicit concession by the parties that the ALJ did not evaluate plaintiff's credibility properly, nor the testimony by Dr. Reynolds, as discussed further below. The Court concludes that the ALJ's reliance on plaintiff's lack of compliance with medical treatment in order to reject Dr. Neims' opinions, and other evidence, was improper, *see infra*.

There are many areas in which Dr. Neims opined that plaintiff suffered from marked functional limitations on her ability to work, such as her ability to maintain attention and concentration, perform activities within a schedule, work in coordination with or proximity to others without being distracted by them, and complete a normal workday and workweek without interruption from psychological symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods

(*see* Tr. 341-43). There also are areas in which Dr. Neims opined that plaintiff suffered from more than marked limitations on her ability to work or even more severe limitations, such as her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and travel in unfamiliar places and use public transportation (*id.*).

At the hearing, the vocational expert, Mr. William Weiss, ("the VE"), provided expert testimony that was relied on by the ALJ in order to support his finding regarding the other jobs in the national economy that plaintiff could perform given the residual functional capacity as found by the ALJ (*see* Tr. 399-400; *see also* Tr. 34-35). The VE testified that if one additionally credits as true the opinion from Dr. Neims that plaintiff suffers from marked impairment in her ability to complete a normal workday and workweek without interruption from psychological and symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, plaintiff probably would not be able to maintain employment (*see* Tr. 402-03; *see also* Tr. 342). In this context, marked impairment specifically was delineated as 2-4 hours in a workday, or 10-20 hours in a workweek, or 25-50% of the time (*see* Tr. 342, 402).

The VE also testified that if one credits as true the opinion from Dr. Neims that plaintiff suffers from marked impairment in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, that she would not be able to sustain work (*see* Tr. 342, 403).

1    This testimony demonstrates that with respect to Dr. Neims' opinions, "it is clear

2    from the record that the ALJ would be required to find the claimant disabled were such

3    evidence credited." *See Harman, supra*, 211 F.3d at 1178 (*quoting Smolen, supra*, 80

4    F.3d at 1292). The Court already has concluded based on the relevant record that the ALJ

5    "failed to provide legally sufficient reasons for rejecting such evidence" (*id.*). Therefore,

6    this evidence should be credited as true and this matter remanded for a direction to award

7    benefits. *See id.*

8         Even though the ALJ did not find credible plaintiff's testimony that she was "'too

9    scared to take her medications to treat her mental impairments [] because of her daily

10   activities," defendant concedes, appropriately, that plaintiff's activities of daily living "as

11   noted by the ALJ, are not convincingly inconsistent with her alleged limitations" (*see*

12   Response, ECF No. 25, p. 8 (*citing* Tr. 21, 23, 27, 29, 32-33, 47)). The Court also notes

13   that the ALJ did not find that plaintiff's activities were transferable to a work setting

14   explicitly, and also did not specify any particular testimony by plaintiff that was

15   contradicted by these activities. *See Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) (the

16   Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on

17   certain daily activities  . . . .  does not in any way detract from her credibility as to her

18   overall disability") (*quoting* <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)).

19        Defendant concedes, also appropriately, that plaintiff's "testimony that Effexor

20   caused her to hear voices and go crazy which, in turn, terrified her and prevented her

21   from taking other medications, was confirmed by her sister, and also validated by Dr.

22   Reynolds" (*see* Response, ECF No. 25, p. 8 (*citing* Tr. 54-55, 63-64, 381, 389, 398)), *see*

1   *also infra.* The Court will discuss Dr. Reynolds' testimony before making the

2   determination regarding the ALJ's evaluation of plaintiff's credibility and testimony.

3        Dr. Reynolds is a licensed clinical psychologist in the state of Washington, who

4   has been practicing for over thirty years (*see* Tr. 390-91).  He reviewed some of

5   plaintiff's records and opined that:

6   
7           the primary diagnosis would be a panic disorder with agoraphobia. A
        secondary anxiety diagnosis would be generalized anxiety disorder. And

8           then, it looks like she has some type of depression, and I think the
        diagnosis of Exhibit 4F, depressive disorder NOS would be a good

9           diagnosis; and Exhibit 12F also gives the same diagnosis, depressive
        disorder NOS. And, the fourth and final diagnosis would be dependent

10          personality disorder.

11  (Tr. 392).

12       Dr. Reynolds opined that the impairments from which plaintiff suffered gave rise

13  to specific functional limitations (*see id.*). For example, Dr. Reynolds opined that plaintiff

14  suffered from marked limitations with respect to activities of daily living and with respect

15  to social functioning (*see* Tr. 393). He also opined that plaintiff suffered from marked

16  limitations in her concentration, persistence and pace (*see* Tr. 394). Although he did not

17  find that plaintiff suffered from any severe panic attacks of extended duration, he found

18  "a history of inability to function outside a highly supportive living arrangement, and

19  there's an indication of continued need for such an arrangement" (*id.*). Dr. Reynolds

20  opined that plaintiff was suffering from such severity of functional limitations since about

21  October, 2007 (*see* Tr. 395).

22

23

24

Defendant concedes that the ALJ's reliance on plaintiff's lack of compliance with treatment was not a legally sufficient reason to discount the reviewing doctor's opinion (*see* Response, ECF No. 25, p. 9). Defendant also concedes that rejecting Dr. Reynolds' opinions because Dr. Reynolds did not examine plaintiff was not sufficient, as the ALJ relied on a non-examining doctor's opinion in his written decision (*id.*). Defendant noted that the ALJ failed to discuss the diagnoses of Dr. Reynolds and noted that the ALJ failed to discuss Dr. Reynolds' opinion regarding plaintiff's functional limitations, however, defendant failed to concede that this was legally erroneous (*id.* at 10). *See also* SSR 96-8p, 1996 SSR LEXIS 5 at *20 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"). Based on a review of the relevant record, the Court concludes that the ALJ failed to provide legally sufficient reasons to discount the medical opinion testimony of Dr. Reynolds.

The vocational expert Weiss ("the VE") was asked to opine regarding if a hypothetical claimant was markedly impaired with regard to concentration, persistence, and pace, as opined by Dr. Reynolds, would such a claimant be able to sustain competitive employment (*see* Tr. 404). The VE testified that such an individual would not be able to sustain such employment (*see id.*). Again, it is clear from the record that the ALJ would be required to find plaintiff disabled were evidence credited that was rejected improperly. *See Harman, supra*, 211 F.3d at 1178; *Smolen, supra*, 80 F.3d at 1292.

In addition, when Dr. Reynolds' testimony is credited, plaintiff also is disabled pursuant to the Listings. At step-three of the administrative process, if the administration

finds that the claimant has an impairment(s) that has lasted or can be expected to last for

not less than 12 months and is included in Appendix 1 of the Listings of Impairments, or

is equal to a Listed Impairment, the claimant will be considered disabled without

considering age, education and work experience.  20 C.F.R. § 404.1520(d).  The claimant

bears the burden of proof regarding whether or not she "has an impairment that meets or

equals the criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the

Listings").  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Regarding Listing 12.04[1], Dr. Reynolds testified that plaintiff suffered from

medically documented persistence of at least four symptoms of depressive syndrome,

---

[1] **Listing 12.04 Affective Disorders**

Characterized by a disturbance of mood, accompanied by a full or partial manic or
depressive syndrome. Mood refers to a prolonged emotion that colors the whole
psychic life; it generally involves either depression or elation.
The required level of severity for these disorders is met when the requirements in both
A and B are satisfied, or when the requirements in C are satisfied.
A.  Medically documented persistence, either continuous or intermittent, of one of the
following:
    1.  Depressive syndrome characterized by at least four of the following:
        a.  Anhedonia or pervasive loss of interest in almost all activities; or
        b.  Appetite disturbance with change in weight; or
        c.  Sleep disturbance; or
        d.  Psychomotor agitation or retardation; or
        e.  Decreased energy; or
        f.  Feelings of guilt or worthlessness; or
        g.  Difficulty concentrating or thinking; or
        h.  Thoughts of suicide; or
        i.  Hallucinations, delusions, or paranoid thinking; or
    2.  Manic syndrome  .  .  .  .
      or
    3.  Bipolar syndrome  .  .  .  .
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or

including appetite disturbance with increased weight; sleep disturbance; decreased

energy; feelings of guilt or worthlessness; thoughts of suicide; and probably pervasive

loss of interest in almost all activities (*see* Tr. 392-93). As mentioned previously, Dr.

Reynolds testified that plaintiff suffered from marked limitations with respect to activities

of daily living; with respect to social functioning; and with respect to her concentration,

persistence and pace (*see* Tr. 393-94). When these opinions are credited at true, plaintiff

is considered disabled without considering age, education and work experience, based on

Listing 12.04. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1, 12.04.

Dr. Reynolds provided similar testimony regarding Listing 12.06[2], anxiety

disorders, noting that plaintiff "meets 1A, motor tension; 1B, autonomic hyperactivity;

---

4. Repeated episodes of decompensation, each of extended duration;
OR
C. Medically documented history of a chronic affective disorder of at least 2 years'
duration that has caused more than a minimal limitation of ability to do basic work
activities, with symptoms or signs currently attenuated by medication or psychosocial
support, and one of the following:  . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, 12.04.

[2] **Listing 12.06, Anxiety Related Disorders**
In these disorders anxiety is either the predominant disturbance or it is experienced if
the individual attempts to master symptoms  . . . . The required level of severity for
these disorders is met when the requirements in both A and B are satisfied  . . . .
A. Medically documented findings of at least one of the following:
  1. Generalized persistent anxiety accompanied by three out of four of the following
signs or symptoms;
      a. Motor tension; or b. Autonomic hyperactivity; or c. Apprehensive
expectation; or d. Vigilance and scanning; or
  2. A persistent irrational fear of a specific object, activity or situation which results
in a compelling desire to avoid the dreaded object, activity or situation; or
  3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of
intense apprehension, fear, terror and sense of impending doom occurring on the
average of at least once a week; or
  4. Recurrent obsessions or compulsions which are a source of marked distress; or

1C, apprehensive expectation; and 1D, vigilance and scanning [a]nd, she meets number 2 – she avoids [INAUDIBLE] object, activity, or situation, which in this case, is mostly going outside her home" (*see* Tr. 392-93). Dr. Reynolds continued with his testimony, finding that plaintiff had "recurrent and severe panic attacks at least once a week on the average, which would be number 3" (*see* Tr. 393). He also found that plaintiff "may or may not have number 5, because she was a victim of, of, of some type of robbery, but that's not documented in the chart to any degree" (*id.*).

Therefore, when the testimony of Dr. Reynolds is credited as true, plaintiff is disabled presumptively also based on Listing 12.06. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1, 12.06. Finally, Dr. Reynolds testified in a similar fashion regarding his opinion that plaintiff's impairments and limitations satisfied the requirements of Listing 12.08, personality disorders[3] (*see* Tr. 393 ("she'd have number five, pathological dependence")).

---

      5.  Recurrent and intrusive recollections of a traumatic experience, which are a
          source of marked distress;
    AND
  B.  Resulting in at least two of the following:
      1. Marked restriction of activities of daily living; or
      2. Marked difficulties in maintaining social functioning; or
      3. Marked difficulties in maintaining concentration, persistence, or pace; or
      4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.06.

[3]**12.08 Personality disorders**. A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

ORDER ON PLAINTIFF'S COMPLAINT - 20

1   Regarding plaintiff's credibility and allegations, when asked if he had an opinion

2   that plaintiff was "volitionally refusing treatment," Dr. Reynolds responded that he

3   thought that "she's truly just terrorized and frightened" (Tr. 398). For the foresaid

4   reasons, the Court concludes that the ALJ failed to provide legally sufficient reasons for

5   his failure to credit fully plaintiff's testimony and credibility.

6   When the evidence provided by Drs. Neims and Reynolds is credited, the

7   testimony of the vocational expert, whose testimony was relied on by the ALJ,

8   demonstrates conclusively that plaintiff was disabled. Dr. Reynolds' testimony mandates

9   a finding of disability without any additional testimony from the VE. In addition, these

10  finding are supported by plaintiff's testimony, which also was rejected by the ALJ

11  without legally sufficient reasons. The Court also notes that the lay evidence, rejected

12  without discussion by the ALJ, also supports the opinions of Drs. Neims and Reynolds,

13  as well as plaintiff's testimony.

14

15

16      A. Deeply ingrained, maladaptive patterns of behavior associated with one of the
        following:
17          1. Seclusiveness or autistic thinking; or
            2. Pathologically inappropriate suspiciousness or hostility; or
            3. Oddities of thought, perception, speech and behavior; or
18          4. Persistent disturbances of mood or affect; or
            5. Pathological dependence, passivity, or aggressivity; or
19          6. Intense and unstable interpersonal relationships and impulsive and damaging
            behavior;
            AND
20      B. Resulting in at least two of the following:
            1. Marked restriction of activities of daily living; or
21          2. Marked difficulties in maintaining social functioning; or
            3. Marked difficulties in maintaining concentration, persistence, or pace; or
22          4. Repeated episodes of decompensation, each of extended duration.

23  20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.08.

24

1    Defendant concedes that "the ALJ did not mention either the written or oral lay

2    witness testimony of [plaintiff]'s sister, Nicole M. Root, who sees her almost daily" (*see*

3    Response, ECF No. 25 p. 11 (*citing* Tr. 57-64, 216-23, 383-90)). Defendant

4    acknowledges that plaintiff's "sister testified that [plaintiff] had difficulty going into

5    public without her help; was too scared to attend doctor's appointments by herself; and

6    had an adverse reaction to medication prescribed to treat her mental impairments" (*id.*

7    (*citing* Tr. 219-20, 384-85, 388-89)).

8    Although defendant contends that this case should be remanded so that the ALJ

9    may consider the lay testimony, (*id.*), such lay testimony, which was rejected without any

10   legally sufficient reason, along with the rest of the evidence improperly rejected by the

11   ALJ, demonstrates conclusively that plaintiff was disabled. *See Harman, supra*, 211 F.3d

12   at 1178; *Smolen, supra*, 80 F.3d at 1292. There are no outstanding issues that must be

13   resolved before a determination of disability can be made. *Id.* There is no utility in further

14   proceedings.

15

16                                CONCLUSION

17   The ALJ failed to provide legally sufficient reasons for rejecting various aspects of

18   the medical and other evidence in the record, including the opinions of Drs. Neims and

19   Reynolds; plaintiff's testimony; and the lay evidence. In addition, this improperly-

20   rejected evidence is consistent with the overall record, and based on the testimony of the

21   vocational expert, it is clear from the record that the ALJ would be required to find the

22   claimant disabled were such evidence credited.

23

24

1    Therefore, there are no outstanding issues that must be resolved before a

2    determination of disability can be made and no utility may be gained from further

3    administrative proceedings.

4    Therefore, this matter is **REVERSED** and **REMANDED** pursuant to sentence

5    four of 42 U.S.C. § 405(g) to the Commissioner with a direction to the Administrative

6    Law Judge on remand to award benefits to plaintiff as of her amended alleged date of

7    disability onset of October 1, 2007.

8    **JUDGMENT** should be for plaintiff and the case should be closed.

9    Dated this 25th day of July, 2012.

10

11

12    J. Richard Creatura
     United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24